**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

In the Matter of:
**ST. JAMES INCORPORATED**
**f/k/a ASC INCORPORATED**,

    Debtor-in-Possession.
_____/

| | |
|---|---|
| **AMERICAN SPECIALTY**<br>**CARS HOLDINGS, LLC,** | Civil Case No. 07-14142<br>Hon. John Feikens |
|     Appellant, | Mag. Judge R. Steven Whalen |
| v. | <u>On Appeal From</u><br>Bankr. Case No. 07-48680 |
| **OFFICIAL COMMITTEE OF UNSECURED**<br>**CREDITORS FOR ASC INCORPORATED,** | Chapter 11 Proceeding<br>Hon. Thomas J. Tucker |
|     Appellee. | |

_____/

**REPLY BRIEF OF AMERICAN SPECIALTY CARS**
**HOLDINGS, LLC IN SUPPORT OF APPEAL**

    American Specialty Cars Holdings, LLC ("Holdings") through its attorneys, Charles J. Taunt and Associates, PLLC, submits this Reply Brief in support of its position on appeal.

i

# Table of Contents

**Table of Contents** ...................................................................................................................ii
**Table of Authority** ................................................................................................................iii
**Introduction**............................................................................................................................1
**Argument** ................................................................................................................................1
   **Final Financing Order**......................................................................................................1
      *Direct vs. Derivative Claims*..........................................................................................2
      *Extent, Validity, Perfection, and Priority of Liens and Claims*..................................3
      *Standing Derived from the Final Financing Order* .....................................................4
   **Cost-Benefit Analysis**........................................................................................................5
   **Breach of Fiduciary Duty**.................................................................................................7
   **Motion to Strike** ................................................................................................................8
**Conclusion**..............................................................................................................................9

## Table of Authorities

**Cases**

*In re America's Hobby Center, Inc.,* 223 B.R. 275 (Bankr. S.D.N.Y. 1998) ......................4
*In re Berryman Products, Inc.,* 183 B.R. 463, 467-468 (N.D. Texas 1995 ........................6
*In re Fas Mart Convenience Stores, Inc.*, 2003 WL 22048024 (E.D. Va. June 25, 2003)..4
*In re the Gibson Group*, 66 F.3d 1436 (6th Cir. 1995)…………………………....*Passim*
*In re Valley Food Services, LLC,* 2006 WL 4449691, (Bankr. W.D.Mo. July 28, 2006)...4
*U.S. v. Zipkin*, 729 F.2d 384, 389 (6th Cir. 1984) ..........................................................2, 3

**Introduction**

In its Appellate Brief (Docket No. 19), Holdings argues that the Bankruptcy Court made three errors when it authorized the Committee[1] to pursue the Adversary Proceeding. First, the Bankruptcy Court failed to conduct a cost-benefit analysis as contemplated and required by *In re the Gibson Group*, 66 F.3d 1436 (6th Cir. 1995). Second, the Bankruptcy Court set forth an unworkable legal standard contrary to the *Gibson Group* test when it held that the Debtor breached its fiduciary duty by not bringing suit against Holdings. Finally, the Bankruptcy Court authorized the commencement of a lawsuit which contains claims against Holdings that were previously waived by the Debtor and therefore cannot be "colorful" under any definition set forth by the Committee.

The Committee filed a Response Brief, Docket No. 28, outlining its position in the Appeal. This Reply Brief serves to address those issues which the Committee has brought before the Court, and together with Holdings Appellate Brief, outlines why the Bankruptcy Court erred and the Authorization Orders should be vacated.

**Argument**

**A. Final Financing Order**

Holdings has made two arguments in the Appeal regarding the Final Financing Order: 1) all claims against Holdings were waived except those that the Committee could bring directly and 2) all claims against Holdings were waived except those that dealt with an objection to the validity, extent, or perfection of Holdings liens and claims. In its

---

[1] All capitalized terms not defined herein have the meaning ascribed in Holdings' Appellate Brief, Docket Number 19.

1

Response Brief, the Committee has focused only on the first argument and has completely ignored the second.

   1. *Direct vs. Derivative Claims*

The Committee has submitted various excerpts of the Bankruptcy Court's ruling on Holdings' Motion for Stay Pending Appeal. The Committee argues that because the Bankruptcy Court has interpreted the Final Financing Order in its favor, such interpretation should govern the case. However, such an argument assumes that such an interpretation was necessary and relevant to this Appeal. The Bankruptcy Court's analysis of its intent in approving the Final Financing Order may appear relevant, but the Final Financing Order speaks for itself as to its content. In such circumstances, parol evidence is inappropriate, as stated by the Sixth Circuit:

> The interpretation of what [the] Bankruptcy Judge…meant by the …order went beyond the provisions of the written order. An order entered by a judge should speak for itself and not be varied by parol testimony as to what was meant by its provisions.

*U.S. v. Zipkin*, 729 F.2d 384, 389 (6th Cir. 1984).

The Final Financing Order indicates that the "Committee only" has a limited exception to the Debtor's waiver. Regardless of what the Bankruptcy Court intended the term to mean, it is impossible to interpret the language to have any other meaning than what Holdings contends. Even under the Committee's interpretation, Holdings view should prevail. According to the Committee, the phrase "Committee only" means "only the Committee and no other person or entity.[2]" However, the Committee "on behalf of the estate of [the Debtor]" as the Adversary Proceeding is captioned is not the same party as the "Committee only." Even the Committee's definition fails to create an ambiguity in

---

[2] See Committee's Appellate Brief, at 17-18, citing the Bankruptcy Court..

2

the Final Financing Order, and there was nothing in the order for the Bankruptcy Court to interpret. The Bankruptcy Court's discussion of what it intended by the Final Financing Order is therefore not relevant and would be erroneous to consider pursuant to *U.S. v. Zipkin, supra.*

The Committee further argues that the Bankruptcy Court's interpretation of the Final Financing Order during the hearing on Holdings' Motion for Stay Pending Appeal is binding on the case and unreviewable because Holdings has not timely appealed it. Such an argument is misleading and incorrect.

Holdings first made the direct vs. derivative argument in its pleadings filed in conjunction with the Motion for Authority[3]. By entering the Authorization Orders, the Bankruptcy Court rejected this argument. Holdings subsequently appealed the Authorization Orders, and in doing so, preserved its argument on appeal that the Bankruptcy Court erred in concluding the Final Financing Order incorporated a reservation of both direct and derivative claims. The Bankruptcy Court's subsequent decision regarding the Motion for Stay Pending Appeal is not additional, only a restatement of the same basis upon which Holdings has perfected its right to appeal.

   2. *Extent, Validity, Perfection, and Priority of Liens and Claims.*

The Committee has not responded to Holdings' argument that the counts of the Amended Complaint other than for recharacterization and equitable subordination are not in the nature of an objection to the extent, validity, perfection, and priority of Holdings' liens and claims, and are therefore subject to the Debtor's waiver. The Authorization

---

[3] "If the Committee's Motion is granted and the Committee on behalf of the debtor is allowed standing to sue, the court will effectively allow a party other than 'the Committee only' to bring suit, defying the terms of the Final Financing Order. The Final Financing Order precludes any objection or challenge to Holdings' lien except by 'the Committee only.' It does not authorize a derivative suit filed by the Committee on behalf of the Debtor." Holdings' Brief in Support of its Objection to Motion for Authority, at 7.

Orders should be therefore vacated to the extent they confer standing on the Committee to bring any causes of action waived by the Debtor and not preserved by the Committee's limited exception.

### 3. Standing Derived from the Final Financing Order

The Committee argues that the Final Financing Order provided independent authority to pursue the claims against Holdings, regardless of whether the requirements of *Gibson Group* have been met. The Committee did not once make this argument before the Bankruptcy Court nor was it briefed by any party. The argument was first made by the Bankruptcy Court during its ruling on Holdings' Motion for Stay Pending Appeal.

Had Holdings been given the opportunity to brief the issue, it could have cited authority holding that a stipulated order granting standing is improper unless the Bankruptcy Court makes factual findings sufficient to meet the tests of derivative standing. *In re America's Hobby Center, Inc.*, 223 B.R. 275 (Bankr. S.D.N.Y. 1998), *In re Fas Mart Convenience Stores, Inc.*, 2003 WL 22048024 (E.D. Va., June 25, 2003)[4], and *In re Valley Food Services, LLC,* 2006 WL 4449691, (Bankr. W.D.Mo., July 28, 2006).[5] In each of these cases, the court rejected the argument advanced by the Committee that standing may be conferred by a court approved order without adhering to the requirements mandated by cases similar to *Gibson Group*.

In addition, the Committee's choice to invoke *Gibson Group* in its Motion for Authority was not done in "an abundance of caution[6]" but supports the conclusion that even the Committee did not believe that such a granting of standing could be derived from the Final Financing Order.

---

[4] See **Exhibit A.**
[5] See **Exhibit B**.
[6] Committee's Appellate Brief, at 5.

4

The Committee has failed to cite to any authority indicating that *Gibson Group* may be circumvented by a consent order similar to the Final Financing Order. Instead, the Committee attempts to assert that Holdings' decision not to appeal the Bankruptcy Court's ruling on Holdings' Motion for Stay Pending Appeal precludes any argument of whether standing was appropriate. At most, the Bankruptcy Court's discussion regarding the Final Financing Order's independent granting of standing is mere dicta. The issue of Committee standing was not before the Bankruptcy Court, nor was the issue even presented by the parties in any prior pleading. Requiring Holdings' to be bound by an informal discussion after an appeal has been filed is unprecedented and unsupported by case law.

Even if the Court construes the Final Financing Order to grant the required authorization, standing only would exist as to those claims which are regarded as objections to the extent, validity, perfection and priority of Holdings' liens and claims. To the extent the Committee alleged other claims, Paragraph X of the Final Financing Order is irrelevant and the Committee would still be required to establish the *Gibson Group* requirements.

### B. Cost-Benefit Analysis

The Committee admits that a cost benefit analysis is required: "[a] Bankruptcy Court must conduct a cost benefit analysis relative to the 'colorable claim' prior to granting a committee standing to pursue claims of the estate." Committee's Appellate Brief, Docket No. 28, at 22. However, the Committee has not cited to any portion of the record where the Bankruptcy Court actually conducted the necessary analysis.

5

The Committee does however cite to and incorporate into its argument a portion of the record where the Bankruptcy Court indicated that no party argued that, under any cost benefit analysis, the claims would benefit the estate. Despite this statement by the Bankruptcy Court, Holdings <u>did</u> argue that the Bankruptcy Court had to perform a specific cost benefit analysis and look beyond the face of the complaint to determine whether, if successful, the estate would be benefited. At the September 19, 2007 hearing on the Motion for Authority, Holdings argued that:

> [The Committee has] omitted a number of the criteria set forth in the *Gibson Group* decision…while it's not a probable cause standard, I suggest the concept is the same…[The Committee] can't just come into Court and make a number of allegations…There has to be a basis for those allegations. There has to be facts presented to the Court and the Court has to make a determination as a Court would in a criminal context at a preliminary exam that there is a basis for proceeding.

September 19, 2007 Hearing Transcript, at 43.

Holdings argued that the Committee failed to meet its burden that there was a possibility of succeeding on the merits of the Adversary Proceeding. This is a major component of the cost benefit analysis that the Bankruptcy Court should have performed, but failed to complete.

The Bankruptcy Court failed to perform a cost-benefit analysis and the Committee has failed in its burden to establish "a colorable claim that would benefit the estate, if successful, based on a cost-benefit analysis performed by the bankruptcy court" as required by the Sixth Circuit in *Gibson Group*. This is clear error and must be reversed. See *In re Berryman Products, Inc.,* 183 B.R. 463, 467-468 (N.D. Texas 1995).

### C. Breach of Fiduciary Duty

The Committee attempts to cloud the waters regarding the Bankruptcy Court's failure to properly address the Debtor's burden to show that the Debtor did not breach a fiduciary duty when the Debtor determined that a lawsuit against Holdings would not benefit the estate. The Committee would like the Court to believe that the Bankruptcy Court considered the Rueckle Affidavit when it made its determination that the Debtor breached its fiduciary duty. This is simply incorrect. The Bankruptcy Court never addressed the sufficiency of the Rueckle Affidavit. The Bankruptcy Court found a breach simply because the Debtor failed to remain neutral.

The Committee's contentions that the Bankruptcy Court did not find the Rueckle Affidavit to be credible is both incorrect and misleading. The Bankruptcy Court's discussion of the Rueckle Affidavit occurred in the context of the Committee's Motion to Appoint a Chapter 11 trustee and was <u>not</u> discussed in the context of the Motion for Authority.

Finally, the Committee is mistaken in its argument, even if this Court considers the Bankruptcy Court's comments regarding the Rueckle Affidavit. The Bankruptcy Court never held that the Rueckle Affidavit was not credible, only that it had to be viewed in light of Mr. Rueckle's relationship to Holdings. Despite this comment, the Bankruptcy Court refused to consider the affidavit contrary to *Gibson Group,* which requires the Debtor to establish that its actions were not a breach of fiduciary duty. The Committee has yet to point out any portion of the record where the Bankruptcy Court determined that the Debtor's analysis in this regard was faulty.

The Committee again argues that the "findings" of the Bankruptcy Court on Holdings' Motion for Stay Pending Appeal preclude any argument on Appeal regarding the same issue. In this Appeal, Holdings argues that the proper legal standard, pursuant to *Gibson Group*, in determining whether a debtor breaches its fiduciary duty is to analyze both the effect on creditors and state law notions of fiduciary duty.

The Rueckle Affidavit was the only evidence submitted on the issue of the Debtor's compliance with the requirements of *Gibson Group* and its alleged breach of fiduciary duty. Nonetheless, the Bankruptcy Court refused to address the sufficiency of the Rueckle Affidavit to determine whether the Debtor fulfilled its obligations based on state law concepts of fiduciary duty. In failing to do so, the Bankruptcy Court erred and the Authorization Orders should be vacated.

**D. Motion to Strike**

Holdings has alleged only three errors by the Bankruptcy Court: 1) the application of the wrong legal standard for a cost-benefit analysis, 2) the application of the wrong legal standard for a breach of fiduciary duty, and 3) allowing claims that were waived to be deemed colorful. The Strike Order was appealed only to the extent that the Bankruptcy Court's findings at the September 19, 2007 regarding the Motion to Strike intersected with those issues listed above which were primarily discussed in the Motion for Authority. Specifically, the Bankruptcy Court made certain determinations regarding the Final Financing Order and Holdings' rights under it in oral argument on the Motion to Strike.

The Bankruptcy Court believed that the Motion to Strike and Motion for Authority were "related enough [that] we can talk about them together." September 19,

2007 Hearing Transcript, at 26. The Bankruptcy Court merged many of the issues common to both motions into one discussion. Holdings appealed the Strike Order only to the extent that the Bankruptcy Court made determinations that affected the ultimate dispute brought by way of the Motion for Authority and Holdings' rights under the Final Financing Order.

## Conclusion

Holdings requests that this Court vacate the Authorization Orders which granted standing to the Committee to bring the Amended Complaint against Holdings. In support of this request for relief, Holdings relies on this Reply Brief, its Appellate Brief (Docket Number 19), and its Brief in Support of its Objection to the Committee's Motion to Dismiss (Docket Number 22). Holdings further requests any other relief which is appropriate under the circumstances.

**CHARLES J. TAUNT & ASSOCIATES, PLLC**

By    /s/ Dean R. Nelson, Jr.
Charles J. Taunt (P24589)
Erika D. Hart (P67457)
Jami A. Statham (P69747)
Matthew P. Taunt (P69696)
Attorneys for American Specialty Cars Holdings, LLC
700 East Maple Rd., Second Floor
Birmingham, MI 48009
(248) 644-7800
dnelson@tauntlaw.com
(P70818)

Dated: December 10, 2007

9

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

In the Matter of:
**ST. JAMES INCORPORATED
f/k/a ASC INCORPORATED**,

    Debtor-in-Possession.
_____/

| | |
|---|---|
| **AMERICAN SPECIALTY CARS HOLDINGS, LLC,** | Civil Case No. 07-14142 |
| | Hon. John Feikens |
| Appellant, | Mag. Judge R. Steven Whalen |
| | |
| v. | On Appeal From |
| | Bankr. Case No. 07-48680 |
| **OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ASC INCORPORATED,** | Chapter 11 Proceeding |
| | Hon. Thomas J. Tucker |
| Appellee. | |

_____/

## CERTIFICATE OF SERVICE

    I certify that on December 10, 2007, I electronically filed **Holdings' Reply Brief in Support of Appeal and this Proof of Service** with the Clerk of the Court using the ECF systems which will send notification of such filing to the following recipients:

- **Erika D. Hart**
  ehart@tauntlaw.com
- **David E. Schlackman**
  dschlackman@carsonfischer.com, brcy@carsonfischer.com
- **Charles J. Taunt**
  cjtaunt@tauntlaw.com

                                                     By    /s/ Dean R. Nelson, Jr.
                                                              700 East Maple Rd., Second Floor
                                                               Birmingham, MI 48009
                                                               (248) 644-7800
                                                               dnelson@tauntlaw.com
                                                               (P70818)

Dated: December 10, 2007